United City of the Village of Yorkville, Kendall County, Illinois, for the Use and Benefit of James B. Clow & Sons, Inc., a Corporation, Plaintiff-Appellant, v. W. J. Lewis Construction Co., a Corporation, et al., Defendants-Appellees.
Standard Accident Insurance Company, a Corporation, v. Northbrook Supply Co., a Corporation, et al.
Zean Davis d/b/a Davis Construction Company, et al., v. W. J. Lewis Construction Company, Inc., a Corporation, et al.

Gen. No. 11,811.

Second District.

May 21, 1964.

Spray, Price, Townsend & Cushman, all of Chicago (James T. Otis and John R. Mannix, Jr., of counsel), for appellant.

Dent, Hampton & Doten, of Chicago, for appellee, Standard Accident Insurance Co.

ABRAHAMSON, P. J.

This is an action brought by a subcontractor against the general contractor and its surety company to recover for materials furnished in the course of installing a water main extension for a municipality. At the conclusion of the plaintiff's case, the trial court sustained the motion of the surety company to find the issues against the plaintiff and in favor of the surety, and the plaintiff has appealed.

For ease of reference, the United City of the Village of Yorkville will be referred to as Yorkville; James B. Clow & Sons, Inc., as Clow; W. J. Lewis Construction Co. as the contractor; Standard Accident Insurance Company as Standard; the public work in question as the Water Main; the contract between Yorkville and the contractor as the contract; and the consulting engineering firm employed by Yorkville as the Engineer.

On January 13, 1959, Yorkville and the contractor entered into the contract, in which the contractor agreed to install the Water Main under the supervision of, and in accordance with the plans and specifications prepared by, the Engineer. The same day the contractor executed and delivered to Yorkville the bond required by the provisions of an act entitled "An Act in Relation to Bonds of Contractors Entering into Contracts for Public Construction," Illinois Revised

464

Statutes 1957, chapter 29, sections 1 and 2 (paragraphs 15 and 16) in which Standard was the surety.

Certain provisions of the contract are particularly relevant to our consideration of this cause and provide in substance as follows:

1) Guarantee and Maintenance of Work: The Contractor shall maintain the work and make needed repairs during a 1 year period required and determined in the judgment of Yorkville.

2) Final Payment: To be made when the work is completely performed and approved by the Engineer and accepted by Yorkville, upon a final estimate prepared by the Engineer.

3) Authority of Engineer: Engineer shall decide on questions as to the acceptable fulfillment of the contract.

4) Final Inspection: In addition to final acceptance by the Engineer the work must meet with the approval of and receive acceptance by Yorkville.

Additionally, the contractor agreed to seed and sod grassy areas damaged in the course of work and in the event any such areas proved unsatisfactory, to re-seed until growths of grass satisfactory to the Engineer were obtained.

The contractor purchased materials from Clow for the installation, the last of which were delivered July 14, 1959, leaving a balance due to Clow in the sum of $14,595.08. August 31, 1959, Yorkville utilized the water main and on September 2, 1959, the engineer filed his certificate for final payment certifying completion of the work in accordance with the contract and that the contractor was entitled to final payment of $4,594.75. At a meeting of Yorkville on September 10, 1959, a motion was adopted to pay the contractor

the balance owing upon "receipt of a waiver" from Clow for the purchases made from it by the contractor. It is not clear from the record whether the waiver was delivered but final payment was made to the contractor and Yorkville took no further formal action on the contract.

It appears that one Jerrold Cather, a landscape gardener, upon the direction of the contractor who had previously backfilled the area on the West side of King Street, reseeded this area sometime after September 15, 1959, finishing the work around October 1, 1959. The work consisted of fine grading and reconditioning the grass in the area in question; whether the work was in connection with the sewer or water main, or both, is not determined. The engineer testified the Water Main was finished and in use by September 2, 1959, and that no further work was done after that date. It was possible some minor repairs, because of the settlement of the ditch, might have occurred. In addition to the contract for the construction of a water line, there was a contract for the construction of a sewer main installed at approximately the same time and place.

From the evidence it appears the engineer regarded the work as completed by September 2, 1959, and was unaware of any work to be done in the future. The work completed by Cather could have been performed under either the sewer line contract or the water main contract, and, if under the latter, was referable to either the original installation or the maintenance work required by the contract. In this connection it was the obligation of Clow to establish by a preponderance of the evidence that this work was done in performance of the original installation and not let the matter rest in surmise.

■ The complaint by Yorkville for the use of the plaintiff Clow was filed March 18, 1960. It appears that Clow had filed its verified notice of claim January 6, 1960, which was within 180 days of the last day on which Clow delivered material, pursuant to the provisions of section 2 of the Act (paragraph 16) chapter 29, Illinois Revised Statutes 1957. Clow raises the issues as follows:

1) Suit was filed within 6 months after acceptance of the project by Yorkville in that:

a) Yorkville never adopted a formal motion or resolution accepting the work;

b) There can be no acceptance prior to completion of the work.

2) That filing a suit within 6 months after acceptance is not necessary or required for recovery on the bond under section 1 (paragraph 15) chapter 29, Illinois Revised Statutes 1957.

On the contention of Clow that Yorkville never adopted a formal motion or resolution accepting the work, the pertinent provisions of section 2 (paragraph 16) applicable read as follows:

"Provided, further, that no action shall be brought until the expiration of one hundred and twenty (120) days after the date of the last item of work or the furnishing of the last item of materials, except in cases where the final settlement between the officer, board, bureau, or department of municipal corporation and the contractor shall have been made prior to the expiration of the one hundred and twenty (120) day period, *in which case action may be taken immediately following, such final*

467

*settlement; nor shall any action of any kind be brought later than six (6) months after the acceptance by the State or political subdivision thereof of the building project or work.* (Emphasis supplied.)

It is the contention of Clow that the Legislature by using different terms namely "final settlement" and "acceptance" contemplates two separate and distinct events, namely, payment and acceptance, and that Yorkville did not accept the work by formal resolution. Although the contract provisions hereinabove referred to specifically place the responsibility of acceptance on the engineer prior to final settlement, we must look to the meaning of the Statute. Should "acceptance" be defined technically as a resolution by a municipality it would appear that in many instances the time for filing a suit would never run. It is our opinion that upon final payment on the engineer's certificate of completion pursuant to the provisions of the contract and utilization of the water mains that Yorkville accepted, the acceptance date being September 10, 1959.

██ On the issue that there can be no acceptance prior to completion of the work, from the evidence adduced by the witnesses Cather and the engineer pertaining to fine grading, seeding and rolling of a portion of the project, it cannot be determined whether this was in connection with the original contract or with the sewer work being installed, or pursuant to the one year guarantee. In any event the engineer certified that the work was completed pursuant to the contract. Although the trial court made no finding of facts in entering the judgment, we must assume that to enter an Order of Dismissal at the close of the plaintiff's case that the trial court found that the work had been completed on or before the acceptance

468

date of September 10, 1959, and in view of the evidence herein adduced we concur in this finding.

█ The contention is made by Clow that there is no time limitation on the filing of a suit and in construing section 1 (paragraph 15) and section 2 (paragraph 16) it relies solely on Board of Education, Northfield Tp. High School Dist. No. 225, for use of Palumbo v. Pacific Nat. Fire Ins. Co., 19 Ill App2d 290, 193 NE2d 498 (decided by the First District in 1958) which is referred to as the Palumbo case. In the case of City of DeKalb v. M. M. Sornsin, 46 Ill App2d 161, 196 NE2d 502, this court pointed out the reasons we are unable to concur with the decision in the Palumbo case, in substance stating that section 1 (paragraph 15) does not provide a separate remedy to the subcontractor and that section 2 (paragraph 16) must be read in conjunction with section 1 (paragraph 15) and is jurisdictional and the limitations therein control.

For the reasons given the judgment of the Circuit Court of Kendall County is affirmed.

Judgment affirmed.

CARROLL and MORAN, JJ., concur.